UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
(ST. PAUL)

| | |
|---|---|
| RHONDA STONE,<br><br>Plaintiff,<br><br>v.<br><br>SOUTHPOINT FCU and EXPERIAN INFORMATION SOLUTIONS, INC.,<br><br>Defendants. | Case No.:<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL**<br><br>1. **FCRA, 15 USC §1681** *et seq.* |

Plaintiff Rhonda Stone ("Plaintiff"), through Plaintiff's attorneys, alleges the following against Defendants SouthPoint FCU ("SouthPoint"), and Experian Information Solutions, Inc. ("Experian"):

## INTRODUCTION

1. Plaintiff's Complaint alleges violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq. against Defendant Equifax, a consumer reporting agency, for reporting inaccurate information on Plaintiff's credit report.

2. Plaintiff's Complaint also alleges violations of the FCRA against Defendant SouthPoint for failing to conduct a reasonable reinvestigation after receiving notice of Plaintiff's dispute from Defendant Experian.

## JURISDICTION AND VENUE

3. The District Court has federal question jurisdiction over these claims pursuant to 28 U.S.C. § 1331; 15 U.S.C. § 1681.

1

4. Venue in this District is proper pursuant to 28 U.S.C. § 1391(b)(2) in that a substantial part of the events or omissions giving rise to the claim occurred in this district.

5. Defendants transact business here; as such, personal jurisdiction is established.

## PARTIES

6. Plaintiff is a natural person residing in the city of New Ulm in Brown County, Minnesota.

7. Plaintiff is a *consumer* as defined by the FCRA, 15 U.S.C. §1681a(c).

8. Defendant SouthPoint is a financial institution engaged in the business of providing credit and collecting debt. SouthPoint is also a *furnisher*, as defined in 15 U.S.C. § 1681s-2. Upon information and belief, SouthPoint is regularly engaged in the business of furnishing credit information to the credit reporting agencies. SouthPoint is headquartered at 924 East Main, Sleepy Eye, MN 56085, and can be served at the same address, which is registered with the state of Minnesota.

9. Defendant Experian is a *consumer reporting agency* ("CRA") as defined in 15 U.S.C. § 1681a(f). Upon information and belief, Defendant is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing *consumer reports*, as defined in 15 U.S.C. § 1681a(d), to third parties. Experian's headquarters is located at 475 Anton Blvd., Costa Mesa, CA 92626. Experian can be served through their registered agent, C T Corporation System, Inc., located at 1010 Dale Street North, St. Paul, MN 55117-5603.

10. Upon information and belief, Defendant Experian disburses *consumer reports* to third parties under contract for monetary compensation.

11. At all relevant times, Defendants SouthPoint and Experian acted through duly

authorized agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

12. Any violation by Defendants was not in good faith, was knowing, negligent, willful, and/or intentional, and Defendant did not maintain procedures reasonably adapted to avoid any such violation.

## FACTUAL ALLEGATIONS

13. Defendant Experian reports consumer information about Plaintiff and other consumers through the sale of consumer reports (credit reports).

14. Defendant Experian's credit reports generally contain the following information: (i) *Header/Identifying Information*: this section generally includes the consumer's name, current and prior addresses, date of birth, and phone numbers; (ii) *Tradeline Information*: this section pertains to consumer credit history, and includes the type of credit account, credit limit or loan amount, account balance, payment history, and status; (iii) *Public Record Information*: this section typically includes public record information, such as bankruptcy filings; and (iv) *Credit Inquiries*: this section lists every entity that has accessed the consumer's file through a "hard inquiry" (i.e., consumer-initiated activities, such as applications for credit cards, to rent an apartment, to open a deposit account, or for other services) or "soft inquiry" (i.e., user-initiated inquiries like prescreening).

15. Defendant Experian gains access to consumer information from various sources, including furnishers who provide consumer information to Experian, and information Experian independently sources itself or through third party providers/vendors or repositories, including computerized reporting services like PACER.

16. The information reported by Defendant Experian contributes to consumer

creditworthiness, including their FICO Scores, which are calculated using information contained in Experian's consumer credit reports.

17. The majority of financial services lenders (e.g., banks, creditors, lender) rely upon credit reports, FICO Scores and other proprietary third-party algorithms – "scoring" models – to interpret the information in a credit report.

18. These algorithms use variables or "attributes" derived from the credit report to calculate a "credit score," which ultimately determines consumer creditworthiness.

19. FICO Scores consider the following factors: Payment history (35%); Amount of debt (30%); Length of credit history (15%); New credit (10%); and Credit mix (10%).

20. Amount of debt owed is a major factor in a consumer's credit score; by reporting a debt as outstanding when it is in fact discharged, a consumer reporting agency creates an impression that the Amount of currently owed debts is higher than it actually is thereby impacting a consumer's credit score.

21. Payment history refers to whether a consumer has paid his or her bills in the past, and whether these payments have been timely, late, or missed.

22. The more severe, recent, and frequent late payments are, the greater the harm to the FICO Score.

23. In factoring the severity of delinquent payments a FICO Score considers how late the payment continues to be, how much is owed, how recently this occurred, and how many delinquent accounts exist.

24. Defendant Experian obtained and reported Plaintiff's consumer bankruptcy information in both the Public Records section of her consumer credit report, as well as the individuals account tradelines.

25. Defendant Experian had notice of Plaintiff's bankruptcy discharge through independent collection of consumer information as well as from information furnished by tradeline furnishers. Defendant reported Plaintiff's bankruptcy filing and/or discharge in the public record section of their credit reports, as well as in individual account tradelines.

26. Defendant Experian is well aware that the effect of a discharge Order in a Chapter 7 Bankruptcy is to discharge all statutorily dischargeable debts other than those that have been reaffirmed in a reaffirmation agreement or successfully challenged in an adversary proceeding.

27. Information regarding whether a debt has been reaffirmed or successfully challenged through an adversary proceeding is retrievable from the same sources Experian obtains the bankruptcy case information, as well as from information provided to Experian from furnishers of account/tradeline information.

28. Rather than following reasonable procedures to assure maximum possible accuracy, Defendant Experian reports information regarding pre-bankruptcy debts even if that information ignores or contradicts information provided by furnishers of account/tradeline information or information contained in public court records that Defendant has obtained through its independent efforts, or could easily obtain through reasonably available public records.

29. Defendant Experian is on continued notice of its inadequate post-bankruptcy reporting procedures, including inaccurate balances, and account and payment statuses, through the thousands of lawsuits and FTC and Consumer Financial Protection Bureau complaints filed against it for its inaccurate reporting following a Chapter 7 discharge.

30. On a date prior to the relevant time period, Plaintiff and her husband opened a revolving credit account with SouthPoint, with an account #100169**** ("SouthPoint Account").

31. On or about October 22, 2019, Plaintiff and her husband filed for voluntary bankruptcy under Chapter 7 of Title 11, the Bankruptcy Code, in the District of Minnesota (St. Paul), case number 19-3330.

32. There were no objections during Plaintiff's Chapter 7 Bankruptcy, or proceedings to declare any debt "nondischargeable" pursuant to 11 U.S.C. § 523 et seq. There were also no requests for relief from the "automatic stay" codified at 11 U.S.C. §362 et seq. while the Plaintiff's Bankruptcy was pending to pursue the Plaintiff on any personal liability for listed debts.

33. Plaintiff and her husband received a discharge in bankruptcy court on or about January 22, 2020.

34. Plaintiff filed for bankruptcy for the purpose of obtaining a fresh start and rebuilding her credit.

35. Upon information and belief following Plaintiff's Chapter 7 Bankruptcy, Defendant Experian prepared one or more credit reports concerning Plaintiff. Defendant reported Plaintiff's Chapter 7 Bankruptcy case information, including the case number, court, filing date, and/or discharge.

36. Defendant Experian also reported Plaintiff's credit history, including names of credit accounts, account numbers, account types, responsibility for the account (i.e., individual or joint accounts), the date the accounts were opened, status, and the date of the last status update.

37. For accounts included in Plaintiff's Chapter 7 Bankruptcy, including collection accounts, Defendant Experian is generally required to report the status of these debts as discharged through bankruptcy, unless the furnishers provide information showing that a debt was excludable from discharge.

38. Nevertheless, Defendant Experian continued to report one or more accounts inaccurately, with a balance owed between the time the bankruptcy petition was filed and when Plaintiff received the discharge, instead of accurately reporting the status of this pre-petition debt as included in or discharged in Chapter 7 Bankruptcy with a $0 balance.

39. On or around April 1, 2020, Plaintiff's husband obtained his consumer credit report from Experian to ensure that the bankruptcy reporting was accurately.

40. Upon review of her husband's Experian consumer credit report, Plaintiff discovered that Experian was reporting the joint SouthPoint Account inaccurately as open with no indication that the SouthPoint Account had been discharged in bankruptcy. Experian was also reporting the SouthPoint Account with a "Balance" owed of $458.00.

41. Experian's reporting was patently false and materially misleading as the SouthPoint Account was had been discharged in Plaintiff's bankruptcy and therefore was no longer owed by Plaintiff to SouthPoint.

42. Experian did not report that the Southpoint Account had been discharged in bankruptcy despite reporting the bankruptcy in the public records section and reporting other unsecured pre-bankruptcy accounts as "Discharged through Bankruptcy Chapter 7".

43. Notably, the other national consumer reporting agencies Equifax and Trans Union did not inaccurately report the Accounts like Experian.

44. On or about May 20, 2020, Plaintiff and her husband both sent separate letters to Experian, disputing the inaccurate reporting of the SouthPoint Account on their credit.

45. The letters specifically advised that the SouthPoint Account had been included in Plaintiff's bankruptcy.

46. USPS Certified Mail Tracking confirms that Experian received Plaintiff's dispute

letter.

47. Upon information and belief, Experian forwarded Plaintiff's dispute to SouthPoint within 5 business days of receipt.

48. Upon information and belief, Experian failed to respond to Plaintiff's dispute.

49. On or about September 16, 2020, Plaintiff pulled her Experian credit report to ensure that Experian had corrected the reporting.

50. Plaintiff discovered that Experian was still reporting the SouthPoint Account as "Open" and with a "Balance" owed of $458.00.

51. Upon information and belief, Experian did not investigate Plaintiff's dispute and merely forwarded an automated dispute form to SouthPoint. Rather than perform an investigation based on Plaintiff's dispute, reasonably available public records, and information known by Experian through Plaintiff's reported payment history regarding the SouthPoint Account, Experian merely parroted information furnished by SouthPoint despite awareness that the information was factually inaccurate and conflicted with information known by Experian.

52. Upon information and belief, Experian additionally and/or alternatively was on notice of Southpoint's unreliable procedures to properly update the reporting of pre-Chapter 7 debt upon discharge of a bankruptcy, and may therefore have reported information contradicted by Experian's own records and independent knowledge of Plaintiff's bankruptcy discharge in unreasonable reliance on a furnisher.

53. Upon information and belief, SouthPoint also failed to conduct a reasonable investigation after receiving notice of Plaintiff's dispute from Experian. Consequently, SouthPoint continued to furnish inaccurate data to Defendant Experian.

54. Defendant inaccurately reports the status of the Southpoint Account as well as an

inaccurate outstanding balance, even though the debt is in fact discharged, Plaintiff is no longer personally liable for the debts, and Defendants have actual knowledge Plaintiff filed for and received a Chapter 7 Bankruptcy discharge.

55. Consequently, Plaintiff suffers actual damages, including credit harm, loss of credit opportunity, credit denials, and other financial harm. Plaintiff also suffers interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish, humiliation, stress, anger, frustration, shock, embarrassment, and anxiety.

56. Upon information and belief, had Defendants accurately reported the SouthPoint Account, Plaintiff's credit score would have been better.

57. Defendants' conduct exacerbated Plaintiff's frustration during the already stressful post-bankruptcy period by hindering Plaintiff's ability to rebuild her credit.

58. Upon information and belief, Plaintiff applied for credit with CareCredit, LLC and was denied credit due to Defendants' inaccurate reporting.

59. At least five separate financial entities pulled Plaintiff's Experian credit report between February 26, 2020 and May 29, 2020, after Plaintiff's bankruptcy discharge. Therefore, Plaintiff has suffered reputational damage in the form of inaccurate information being provided to third parties by Experian.

## COUNT I
**Defendant Experian**
**(Violations of the FCRA, 15 U.S.C. § 1681 et seq)**

60. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

61. The United States Congress has found that the banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the

banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continual functioning of the banking system.

62. Congress enacted the FCRA to ensure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy.

63. The FCRA requires credit reporting agencies, like Experian, to "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

64. Defendant Experian negligently and/or willfully violated 15 U.S.C. § 1681e(b) by failing to follow reasonable procedures to assure maximum possible accuracy of the information included in Plaintiff's credit file/report, and also by failing to report accurate information when placed on notice that the information Defendant is reporting is inaccurate, and/or otherwise contradicted by information known by Defendant or reasonably available to Defendant.

65. Consequently, Defendant Experian routinely reports inaccurate, and materially misleading information about Plaintiff, without verifying the accuracy of this information, or updating this information as required by § 1681(e)(b) when Defendant possess information inconsistent with the reported information, and possess information establishing that the reported information is in fact inaccurate.

66. In this case, the inaccurately reported debts pertain to the Southpoint debt that Defendant Experian knew predated Plaintiff's Bankruptcy and was discharged by Plaintiff's bankruptcy.

67. Defendant Experian knew or should have known of its obligations under the FCRA, especially pertaining to discharged debts. These obligations are well established by the plain language of the FCRA, in promulgations of the Federal Trade Commission, well-

established case law, and in prior cases involving Defendant from which Defendant is on notice of their unreasonable procedures concerning the reporting of discharged debts.

68. Defendant Experian have obtained or has available substantial written materials that apprised Defendant of duties and obligations mandated by the FCRA, including where consumers file for Chapter 7 Bankruptcy.

69. Upon information and belief, Defendant Experian regularly conducts voluntary public records searches with the intention of including bankruptcy information on the credit reports it sells to other parties.

70. Upon information and belief, Defendant Experian voluntarily conducted public records searches and obtained information about Plaintiff's bankruptcy filing and bankruptcy discharge.

71. The diligence Defendant Experian exercise in recording consumer bankruptcy filings is not replicated in Defendants' reporting of the effect of the bankruptcy upon consumer debts, including the bankruptcy discharge.

72. Despite knowledge of their legal obligations, Defendant Experian acted willfully in consciously breaching known duties and deprived Plaintiff of rights under the FCRA.

73. Defendant Experian possesses information from which Defendants should know the reported information is inaccurate, as Defendant includes the date the consumer filed bankruptcy, whether the consumer obtained a bankruptcy discharge, as well as the date the inaccurate tradeline account/debt arose or was otherwise opened by the consumer.

74. Defendant Experian inaccurately reported Plaintiff's SouthPoint Account as "Open" and with a "Balance" owed when the debt had been discharged in Plaintiff's bankruptcy.

75. Defendant Experian is well aware that discharged debts should not be reported as

late, past due, with an outstanding balance, or with an inaccurate account status such as charge off after the debt is discharged.

76. Defendant Experian violated 15 U.S.C. § 1681e(b) by failing to follow reasonable procedures to assure maximum possible accuracy of the information included in Plaintiff's credit file/report, and by also failing to report accurate information when Defendant knew or should have known the information Defendants are reporting is inaccurate, and/or otherwise contradicted by information known by Defendant, reported to Defendant, and/or reasonably available to Defendant.

77. The inaccurate reporting of Plaintiff's information has caused Plaintiff to suffer stress, anxiety, headaches, frustration, emotional and mental pain and anguish, and a decreased credit score. Moreover, the inaccurate reporting of Plaintiff's SouthPoint Account has deprived Plaintiff of credit opportunities and resulted in credit denials.

78. In addition to violating 15 U.S.C. § 1681e(b), Defendants also violated 15 U.S.C. 1681 § 1681i by failing to conduct a reasonable reinvestigation of Plaintiff's dispute.

79. Even after Plaintiff notified Defendant of the inaccurate information it included in Plaintiff's credit file, Defendant continued to inaccurately report the SouthPoint Account as "Open" and with a "Balance" owed.

80. When a consumer disputes the accuracy or completeness of information included in a CRA's credit file, the FCRA requires the agency to either conduct a reasonable reinvestigation into the disputed information **or** delete the disputed information from the consumer's credit file within thirty (30) days of receiving notice of the dispute. 15 U.S.C. § 1681i(a)(2)(A).

81. When conducting its reinvestigation of disputed information in a consumer report,

the credit reporting agency is required to "review and consider all relevant information submitted by the consumer."

82. Additionally, the CRA must notify the person who furnished the disputed information of the consumer's dispute within five business days of its receipt. When notifying the furnisher of the consumer's dispute, the CRA is to "include all relevant information regarding the dispute that the agency received from the consumer." 15 U.S.C. § 1681i(a)(2)(A).

83. Defendant Experian's violations of 15 U.S.C. § 1681i include, but are not limited to the following:

   i. Failing to reasonably reinvestigate the inaccurate information Plaintiff disputed.
   ii. Failing to consider all relevant information while investigating Plaintiff's dispute.
   iii. Failing to include all relevant information when notifying SouthPoint of Plaintiff's dispute.

84. Instead of reasonably reinvestigating Plaintiff's dispute, Defendant Experian continued to report the discharged SouthPoint Account as "Open" with a "Balance" owed.

85. Defendant's acts, as described above, and violations of 15 U.S.C. § 1681e(b) and 15 U.S.C. § 1681i was done willfully and knowingly

86. Alternatively, Defendant Experian was negligent, entitling Plaintiff to recover damages pursuant to 15 U.S.C. § 1681o.

87. The inaccurate reporting of Plaintiff's information has caused Plaintiff to suffer from stress, anxiety, headaches, frustration, and emotional and mental pain and anguish, a decreased credit score. Moreover, the inaccurate reporting of Plaintiff's Account has deprived Plaintiff of credit opportunities and resulted in credit denials.

88. Defendant's inaccurate and negative reporting also damaged Plaintiff's

creditworthiness. Consequently, Plaintiff suffers damages, including credit harm, loss of credit opportunity, credit denials, and other financial harm. Plaintiff also suffers interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish, humiliation, stress, anger, frustration, shock, embarrassment, and anxiety.

89. Defendant Experian is a direct and proximate cause, as well as a substantial factor in causing actual damages and harm to Plaintiff, including, but not limited to, credit denials, embarrassment, anguish, and emotional and mental pain.

90. Defendant Experian is therefore liable for actual damages, statutory damages, punitive damages, attorneys' fees, costs, as well as other such relief allowable by law, described in this Complaint and/or permitted by 15 U.S.C. § 1681 et seq.

## COUNT II
## Defendant SouthPoint
## (Violations of the FCRA, 15 U.S.C. § 1681s-2(b))

91. Plaintiff incorporates by reference all the above paragraphs of this Complaint as though fully stated herein.

92. The FCRA requires that furnishers of information, like SouthPoint, upon receipt of a consumer dispute forwarded by a CRA, conduct an investigation with respect to disputed information, review all relevant information, and report the results of the investigation to the credit reporting agency. If the investigation reveals the information is incomplete or inaccurate, the furnisher is required to report those results to all credit reporting agencies to which the furnisher has provided the inaccurate information.

93. SouthPoint knew or should have known about its obligations under the FCRA. These obligations are well established in the plain language of the FCRA, in the regulations promulgated by the Federal Trade Commission, and in well-established case law. SouthPoint

obtained or had available substantial written materials that apprised it of its duties under the FCRA. Despite knowing these legal obligations, SouthPoint acted consciously in breaching its known duties and deprived Plaintiff of her rights under the FCRA.

94. Plaintiff disputed the SouthPoint tradeline through Experian.

95. Thereafter, Experian forwarded Plaintiff's dispute to SouthPoint, notifying SouthPoint that Plaintiff was disputing the information it had furnished about the SouthPoint Account.

96. SouthPoint received notice of Plaintiff's dispute, and failed to reasonably investigate or otherwise take corrective measures despite possessing all relevant knowledge regarding the dispute.

97. SouthPoint continues to furnish inaccurate information about Plaintiff to Experian, even though SouthPoint possesses all relevant information about the SouthPoint Account and the inaccuracy that Plaintiff disputed.

98. The inaccurate SouthPoint Account materially and adversely affects Plaintiff's credit standing.

99. On at least one occasion within the past two years, by example only and without limitations, Defendant SouthPoint violated 15 U.S.C. § 1681s-2(b)(1)(A) by failing to fully and properly investigate Plaintiff's dispute to Experian.

100. SouthPoint violated sections 15 U.S.C. §§ 1681n and 1681o of the FCRA by engaging in willful and negligent noncompliance of 15 U.S.C. § 1681s-2(a), (b), and engaging in conduct that violates 15 U.S.C. § 1681s-2(a), (b), including:

    i. (Willfully and negligently failing to conduct an investigation of Plaintiff's dispute, despite possessing knowledge, information, and records to substantiate

      Plaintiff's dispute;

ii. Willfully and negligently failing to review all relevant information concerning Plaintiff's dispute;

iii. Willfully and negligently failing to report the results of investigations to the relevant consumer reporting agencies;

iv. Willfully and negligently failing to report to the CRAs that the disputed information is indeed inaccurate;

v. Willfully and negligently failing to properly participate, investigate and comply with the reinvestigations that were conducted by any and all consumer reporting agencies concerning the inaccurate information disputed by Plaintiff;

vi. Willfully and negligently continuing to furnish and disseminate inaccurate credit, account and other information concerning the Plaintiff to the consumer reporting agencies despite actual knowledge of the falsity of the reported information; and

vii. Willfully and negligently failing to comply with the requirements for furnishers of information enumerated in 15 U.S.C. § 1681s-2(b).

101. SouthPoint unreasonably refused to take corrective measures required by the FCRA to correct and/or update Plaintiff's consumer information furnished to the national consumer reporting agencies.

102. SouthPoint's actions were a direct and proximate cause, as well as a substantial factor in, damages and harms suffered by Plaintiff.

103. Consequently, SouthPoint is liable to Plaintiff for the full amount of statutory, actual and punitive damages, as described herein and as allowable by law. Additionally, Plaintiff is entitled to attorneys' fees and costs, as well as other such relief permitted by 15 U.S.C. §

1681n and § 1681o.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Rhonda Stone respectfully requests judgment be entered against Defendants for the following:

    A. Declaratory judgment that Defendants violated the FCRA;

    B. Actual damages pursuant to 15 U.S.C. § 1681n(a)(1) or § 1681o(a)(1);

    C. Statutory damages of $1,000.00 pursuant to 15 U.S.C. § 1681n(a)(1);

    D. Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

    E. Costs and reasonable attorney's fees pursuant to 15 U.S.C. §§ 1681n(a)(3) and 1681o(a)(2);

    F. Awarding Plaintiff any pre-judgment and post-judgment interest as may be allowed under the law; and

    G. Any other relief that this Court deems appropriate.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby demands a trial by jury of all issues triable by jury.

Respectfully submitted: January 4, 2021.

                                        By: *s/Jenna Dakroub*
                                        Jenna Dakroub
                                        Bar Number: 0401650
                                        **Price Law Group**
                                        8245 N. 85th Way
                                        Scottsdale, AZ 85258
                                        Telephone: (818) 600-5513
                                        Fax: (818) 600-5413
                                        E: jenna@pricelawgroup.com
                                        *Attorney for Plaintiff Rhonda Stone*